United States District Court
Southern District of Texas

**ENTERED**

March 23, 2016

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| COLLINS BACKHOE & WATER SERVICE, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-15-196 |
| | § | |
| ANADARKO PETROLEUM CORPORATION | § | |
| | § | |

**MEMORANDUM AND ORDER**

These cross-motions for summary judgment raise two questions.  The first is whether Texas or Wyoming law applies; the second is whether and how that choice matters.  Both answers turn on whether a contract to install a sand trap on a gas well is an "agreement pertaining to any well for oil, gas, or water" under Wyoming law.  This memorandum and opinion addresses that issue.

Collins Backhoe & Water Service sued Anadarko Petroleum Corporation, seeking a declaratory judgment that the parties' contract requires Anadarko to indemnify Collins in a Wyoming state-court negligence action.  Collins moved for summary judgment, arguing that the contract's indemnification clause is enforceable under Texas law.  Anadarko filed a cross-motion on the basis that Wyoming's anti-indemnity statute voids the indemnity provision.  Collins responded that even if Wyoming law applies, that state's anti-indemnity statute does not.  (Docket Entry Nos. 14, 16, 19).

Based on a review of the motions, the briefs and submissions, the pleadings, the record, and the applicable law, the court grants Collins's motion for summary judgment.  The court also orders Collins to file a proposed final judgment, after circulating it to Anadarko for approval as to form, no later than March 29, 2016.

The reasons are explained below.

1

## I.     Background

The parties did not conduct discovery and agree that there are no material fact disputes in the record.  The summary judgment evidence includes the parties' contract, the complaint filed in the state-court action for which Collins seeks indemnification, and an investigation report Anadarko wrote about the workplace accident giving rise to the lawsuit.  (Docket Entry No. 14, Exs. A–C).

Collins is a South Dakota corporation with its principal place of business in Wyoming.  Anadarko is a Delaware corporation with its principal place of business in Texas.  (Docket Entry No. 1 at p. 2).  In January 2007, Collins entered into a contract with Anadarko to perform oilfield services.  The contract was negotiated and executed by Anadarko in Texas and by Collins in Wyoming.  (Docket Entry No. 14, Ex. A).

The contract provided that Anadarko would indemnify Collins for its negligence.  The indemnity provision reads:

> Notwithstanding anything to the contrary in the other provisions of this Agreement, **COMPANY** [Anadarko] **AGREES TO BE RESPONSIBLE FOR AND ASSUME ALL LIABILITY FOR AND HEREBY AGREES TO DEFEND, RELEASE, INDEMNIFY, AND HOLD HARMLESS CONTRACTOR INDEMNITEES** [Collins] **AGAINST CLAIMS ARISING IN CONNECTION WITH: (I) BODILY INJURY TO AND/OR DEATH OF COMPANY'S PERSONNEL AND COMPANY'S INVITEES; AND/OR (II) SUBJECT TO SECTION 5, DAMAGE TO PROPERTY OF COMPANY, COMPANY'S PERSONNEL, AND ITS AND THEIR INVITEES; ARISING IN CONNECTION WITH THIS AGREEMENT, REGARDLESS OF FAULT.**

(*Id.* at ¶ 13(d) (emphasis in original)).  The contract defined the term, "regardless of fault," to mean:

> **WITHOUT REGARD TO THE CAUSE OR CAUSES OF ANY CLAIM, INCLUDING, WITHOUT LIMITATION, A CLAIM CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE (WHETHER SOLE, JOINT, CONCURRENT, COMPARATIVE, CONTRIBUTORY, ACTIVE, PASSIVE, GROSS, OR OTHERWISE), WILLFUL MISCONDUCT, STRICT LIABILITY, OR OTHER FAULT OF ANY MEMBER OF COMPANY INDEMNITEES, CONTRACTOR INDEMNITEES, INVITEES AND/OR**

2

**THIRD PARTIES, AND WHETHER OR NOT CAUSED BY A PRE-EXISTING CONDITION OR THE UNSEAWORTHINESS OF ANY VESSEL OR UNAIRWORTHINESS OF ANY AIRCRAFT OF A PARTY WHETHER CHARTERED, OWNED, OR PROVIDED BY COMPANY INDEMNITEES OR CONTRACTOR INDEMNITEES.**

(*Id.* at ¶ 13(a)(4) (emphasis in original)).

The contract also contained a choice-of-law clause.  It read:

This agreement shall be governed by and interpreted in accordance with **General Maritime Law, but if General Maritime Law is not applicable, the laws of the State of Texas (exclusive of any principles of conflicts of laws which would direct application of the substantive laws of another jurisdiction) shall govern.**

(*Id.* at ¶ 12 (emphasis in original)).

The work Collins agreed to perform included installing a sand trap on a recently completed Anadarko gas well in Wyoming.  (Docket Entry No. 14, Ex. B).  A sand trap separates sand and other particles from oil and natural gas.  (*Id.*).  Two days after Collins installed the trap, Curtis Simkins, an Anadarko employee, was injured when he tried to empty it.  He sued Collins for negligence in Wyoming state court, where the suit is pending.  (Docket Entry No. 14, Ex. C).

The parties do not dispute the following facts alleged in Simkins's state-court complaint:

Collins was a sub-contractor hired to install a sand trap on a new gas well owned by Anadarko known as Church Butte Buffer 8-27 located in the southeast corner of the southwest corner of Section 27, Township 18 north, Range 112th west, in Uinta County, Wyoming (hereinafter referred to as the "well site").

[T]he sand trap was installed by Collins on or about June 19, 2007.  The sand trap unit was completely installed by Collins employees.  Following the installation of the sand trap on said date, Collins employees performed pressure testing on the sand trap using well head pressure.  During the pressure testing, fluid leaks were detected in two valves and a [mismatched] hammer union was discovered.

[Collins] returned back to the job site and made repairs and performed another pressure test of the sand trap.  The system checked out under pressure and the well was returned to production.

3

> On June 21, 2007, [Simkins] proceeded to the well site to check the pressure on the well head. [Simkins] found that the well had shut itself down.  While attempting to blow down the sand trap to empty out sand that accumulated from well production, [Simkins] heard pressure coming through the line.  The line separated from the bottom of the sand unit and impacted [Simkins] [with] such force to cause him to be thrown back 40 feet from the sand unit.  When the pipe separated from the sanding unit, it struck [Simkins] causing numerous injuries, including but not limited to a right arm fracture, rib fractures, shoulder injuries, abrasions, and lacerations and other debilitating injuries.

(Docket Entry No. 14, Ex. C at ¶¶ 10–13).  These facts are consistent with the facts stated in an injury-investigation report Anadarko wrote after the accident.  (Docket Entry No. 14, Ex. B).

## II.    The Legal Standard for Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nola Spice Designs, LLC v. Haydel Enters., Inc.*,783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'"  *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial."  *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325.  Although the party moving for

summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

When the parties cross-move for summary judgment, the court must review "each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 (5th Cir. 2010)

(alteration omitted) (quotation marks omitted).

## III.    Discussion

Under the contract's choice-of-law clause, Texas law applies unless "any principles of conflicts of laws . . . direct application of the substantive laws of another jurisdiction." (Docket Entry No. 14, Ex. A ¶ 12). The parties agree that Texas choice-of-law rules govern. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013) ("A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits.").

The Texas Supreme Court has "adopted [Restatement (Second) of Conflict of Laws] section 187, which provides the framework for determining whether the parties' agreement as to choice of law is enforceable." *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014). When, as here, a contract contains a choice-of-law clause, indemnity is governed by the law chosen by the parties unless "another state: (1) has a more significant relationship with the parties and the transaction at issue than the chosen state does under Restatement § 188; (2) has a materially greater interest than the chosen state does in the enforceability of a given provision; and (3) has a fundamental policy that would be contravened by the application of the chosen state's law." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 582 (5th Cir. 2015) (citing *Drennen*, 452 S.W.3d at 325–27).

The parties agree that if Texas law applies, the indemnity clause is enforceable, and Collins is entitled to the declaratory judgment it seeks, as a matter of law. (Docket Entry No. 14 at p. 14–17; Docket Entry No. 16 at p. 9). Anadarko invokes the § 187 exception to argue that Wyoming law applies. The dispute centers on the third element. Anadarko argues that because Wyoming law makes the indemnity clause void, applying Texas law to enforce the clause "would contravene a

6

fundamental policy" of Wyoming. *See Cardoni*, 805 F.3d at 585 (application of state law contravenes a fundamental policy of another state when "the law in question is a part of state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction." (quoting *DeSantis v. Wackenhut*, 793 S.W.2d 670, 680 (Tex. 1990)). Collins argues that Wyoming's anti-indemnity statute does not apply and that the indemnity clause is enforceable under either Texas or Wyoming law, making the § 187 exception irrelevant.

The arguments and responses are each analyzed below.

### A.     The Wyoming Anti-Indemnity Statute

"The Wyoming State Legislature has codified a policy, limited to contracts 'pertaining to any well for oil, gas or water, or mine for any mineral,' that prohibits agreements indemnifying an indemnitee against liability for its own negligence[.]" *Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d 1051, 1074 (Wyo. 2002). The general rule is that "[a]ll agreements . . . pertaining to any well for oil, gas or water, or mine for any mineral, which purport to indemnify the indemnitee against loss or liability for damages for . . . [d]eath or bodily injury to persons . . . are against public policy and are void and unenforceable to the extent that such contract of indemnity by its terms purports to relieve the indemnitee from loss or liability from his own negligence." WYO. STAT. § 30-1-131(a)(i). This rule is limited to those contracts "pertaining to any well for oil, gas or water, or mine for any mineral," which is defined as follows:

> any agreement or understanding, written or oral, concerning any operations related
> to drilling, deepening, reworking, repairing, improving, testing, treating, perforating,
> acidizing, logging, conditioning, altering, plugging, or otherwise rendering services
> in or in connection with any well drilled for the purpose of producing or disposing

7

of oil, gas or other minerals, or water, and designing, excavating, constructing, improving, or otherwise rendering services in or in connection with any mine shaft, drift, or other structure intended for use in the exploration for or production of any mineral, or an agreement to perform any portion of any such work or services or any act collateral thereto, including the furnishing or rental of equipment, incidental transportation, and other goods and services furnished in connection with any such service or operation.

*Id.* § 30-1-132. The statute furthers "two important public policies": "the freedom of persons to contract for legitimate and proper purposes" and "safety in the work place." *Cities Serv. Co. v. N. Prod. Co.*, 705 P.2d 321, 329 (Wyo. 1985). Because "the statutory scheme . . . restricts the freedom to contract, a common law right, [it] must be strictly construed." *Union Pac. Res. Co. v. Dolenc*, 86 P.3d 1287, 1293 (Wyo. 2004) (citation omitted) (quotation marks omitted). At the same time, the statute gives each party "a considerable incentive to avoid industrial accidents and injuries" because each is "responsible for its own activities and liable for loss and damage caused by its own failure to exercise reasonable care in its operations." *Cities Serv.*, 705 P.2d at 330.

The contract "is not an agreement for [Collins] to do any particular identified project. Rather, it provides that its terms will govern all work performed by [Collins] for [Anadarko] under verbal or written workorders." *See Gainsco*, 53 P.3d at 1076. The parties dispute whether the work performed under the contract—including Collins's installation of the sand trap, which gave rise to the negligence suit and the indemnification claim—pertains to "any well for oil, gas or water, or mine for any mineral" under § 30-1-132.

Neither party asserts that installing a sand trap relates to any of the statute's enumerated activities: drilling, deepening, reworking, repairing, improving, testing, treating, perforating, acidizing, logging, conditioning, altering, or plugging. Instead, the issue is whether sand-trap installation is an activity that triggers what Wyoming courts refer to as the anti-indemnity statute's

8

"catchall phrase":  activity relating to "rendering services in or in connection with any well drilled for the purpose of producing or disposing of oil, gas or other minerals."

The Wyoming Supreme Court has acknowledged that while "the anti-indemnity statute is awkward and contains an ambiguous description of the nature of the work or services to which it applies," *Union Pac.*, 86 P.3d at 1292, the statute's catchall phrase "should be construed to cover only those services closely related to *well drilling*," *Reliance Ins. Co. v. Chevron U.S.A., Inc.*, 713 P.2d 766, 770 (Wyo. 1986) (emphasis added).  The Court applied the statutory-construction canon *ejusdem generis*, under which "a general terms which concludes a list of specifically enumerated terms should be restricted to the same genus as the things enumerated." *Reliance*, 713 P.2d at 770. Because the statute's enumerated activities "are activities conducted upon the well itself, . . . [t]he anti-indemnity statute applies only to contracts for work performed directly on oil, gas, and water wells." *Union Pac.*, 86 P.3d at 1293.  "Not covered are services or activities having a remote or indirect connection to the kinds of services enumerated in § 30-1-132[.]" *Reliance*, 713 P.2d at 770.

B.      **The Case Law**

The Wyoming Supreme Court has applied the anti-indemnity statute's catchall phrase in at least five cases.  In each, an oilfield worker was injured or killed on the job and sued his employer, who then sought indemnification from a third party.  In four of the five cases, the court held or stated in dicta that the work performed did not closely relate to well drilling, so the catchall phrase did not apply and the parties' contractual indemnification clause remained valid.  In *Reliance*, for example, a worker was injured digging holding pits to contain a waste-water and oil spill resulting from a fire at an oil-and-gas separation facility.  *Id.* at 768.  The facility separated oil from gas and then "reinjected [the gas] into the oil field to repressurize oil wells."  *Id.* at 770.  Although the facility

9

enhanced oil production by repressurizing the wells, the injured worker "was not involved in actual fire fighting which would enable the plant to resume repressurization." *Id.* Instead, he "was digging the pits so that waste from the fire would not flow into local drainages." *Id.* This activity, the Court concluded, was not "closely related to well drilling" because it had only "a remote or indirect connection to the kinds of services enumerated in § 30-1-132[.]" *Id.*

The Court confronted a similar set of facts in *Union Pacific*. The worker was injured while cutting pipe with a welding torch at a facility that separated water from oil and reinjected the water into the oil field to enhance oil production. *Union Pac.*, 86 P.3d at 1289–90. The Court reasoned that the case was similar to *Reliance* because although it could not "determine what distance the [facilities] were located from the wells," it could "assume [that they] were centrally located some distance away from the wells they served." *Id.* at 1293. And in both cases, the work had not been "performed on the well itself," but on "processing equipment downstream of the well." *Id.* The Court explained that even though both the natural-gas repressurization in *Reliance* and the water-reinjection in *Union Pacific* enhanced oil production, "the specific types of well work listed by the legislature as being covered [under the anti-indemnity statute] . . . [do not] relate to the processing of gas or water *after* production from the well has occurred." *Id.* at 1294 (emphasis added). If the statute's catchall phrase was read to cover any type of work relating to oil production, the Court stated, there would be no limit: "work anywhere in the course of oil and gas production, processing, transportation or distribution could be covered." *Id.*

The opinion in *Gainsco* also reflects the Court's emphasis on limiting the catchall phrase to work performed directly on the well and not applying it broadly to work performed at any stage in the oil-production process. The Court concluded that a worker who was killed "when he was

overcome by [hydrogen-sulfide] gas [that leaked]" while he was transporting oil did not perform services closely related to well drilling. *Gainsco*, 53 P.3d at 1077. Similarly, the Court has suggested in dicta that work on natural-gas pipelines is not closely related to well drilling. *Northwinds of Wyoming, Inc. v. Phillips Petroleum Co.*, 779 P.2d 753, 757 n.5 (Wyo. 1989). In *Cities Service*, by contrast, it was undisputed that the catchall phrase covered work performed on pumping units. 705 P.2d at 326.

At least two federal courts have applied Wyoming law in diversity-jurisdiction cases to determine the catchall phrase's scope. In *R&G Electric, Inc. v. Devon Energy Corp.*, 53 F. App'x 857 (10th Cir. 2002), the Tenth Circuit examined whether an electrician injured while repairing a malfunctioning pump at a central distribution point was engaged in work closely related to well drilling. The central distribution point was where methane gas was received from ten to twelve separate gas wells and excess water was separated from the gas before it was sent through another pipeline. *Id.* at 858. The closest well was 600 feet away. *Id.* The Tenth Circuit held that the electrical-repair work was not closely related to well drilling, emphasizing the Wyoming Supreme Court's holdings in *Gainsco* and *Reliance* that "activities with a '*remote* or *indirect*' connection to the well itself are outside the [anti-indemnity] statute's scope." *Id.* at 862 (emphasis in original) (quoting *Gainsco*, 53 P.3d at 1075 (quoting *Reliance*, 713 P.2d at 770)). The Tenth Circuit interpreted "remote" to mean geographically remote; the question was how far away the activity was from the oil well. *Id.* at 861–62. The court interpreted "indirect" as related to function; the question here was whether the activity involved well drilling—like the pumps in *Cities Service*—or involved processing *after* the oil had been drilled—like the separating facilities in *Reliance* and *Union Pacific*, or the oil transportation in *Gainsco*. *See id.* The Tenth Circuit concluded that the electrical

work at issue was both remote and indirect.  The central distribution point pumps were 600 feet from the nearest well and performed metering, consolidating, and separating functions after the gas had been drilled.  *Id.* at 862.  The Tenth Circuit also stressed the Wyoming Supreme Court's frequent admonition to strictly construe the anti-indemnity statute.  *Id.*

In *Shaw v. Dawson Geophysical Co.*, 657 F. Supp. 2d 740 (S.D. W.Va. 2009), the district court applied this same framework to conclude that a worker who was injured while drilling holes to record seismic data was not doing work closely related to well drilling.  The injury occurred while the worker was drilling holes as part of seismic testing to investigate the "possible drilling of gas wells."  *Id.* at 747 (emphasis omitted).  Because the injury occurred before any wells had been drilled,  the seismic testing was by necessity both "remote" and "indirect."  No well existed, much less was close to, or far away from, the hole-drilling activity.  That activity took place *before* any well, much less oil or gas, had been drilled.  *See id.*  The result was that the anti-indemnification statute did not apply.

C.     **Analysis**

Installing a sand trap on a gas well is not "closely related to well drilling" if (1) the sand trap is geographically "remote" from the well, or (2) the sand trap's function has an "indirect" connection to the well itself.  *Union Pacific*, 86 P.3d at 1293; *Gainsco*, 53 P.3d at 1075; *Reliance*, 713 P.2d at 770; *R&G Elec.*, 53 F. App'x at 862.  Undisputed summary judgment evidence shows that the sand trap was located close to the well itself.  The injury report Anadarko issued after the accident described the site of Simkins's injury as "next to [the] wellhead."  (Docket Entry No. 14, Ex. B at p. 7).  Both the state-court complaint and the injury report stated that the sand trap was installed "on" the well.  (*Id.* at 3; Docket Entry No. 14, Ex. C at ¶ 10).  There is no evidence showing or supporting

an inference that the sand trap was located hundreds of feet from the well.  To the contrary, the evidence shows and supports an inference that the sand trap was physically proximate to the well.  But the Wyoming Supreme Court's test is disjunctive.  If the sand trap's function has an "indirect" connection to the well, its installation cannot be "closely related to well drilling," no matter how close the sand trap is to the well.  The sand trap separates sand and other particles from oil and gas after it has been drilled.  This makes the sand trap's function similar to the function of the facility in *Reliance*, which separated oil from gas, 713 P.2d at 768; the facility in *Union Pacific*, which separated water from oil, 86 P.3d at 1293; and the pumps in *R&G Electric*, which separated water from methane gas, 53 F. App'x at 862.  In all three cases, the conclusion was that the separation function had only an "indirect" connection with well drilling because the oil or gas had already been drilled and was being processed.  Applying that analysis here leads to the conclusion that the sand trap has only an indirect connection with well drilling and that the Wyoming anti-indemnity statute does not apply.

Anadarko argues that the sand trap has a direct connection to well drilling because it "facilitate[d] the flow of production."  (Docket Entry No. 16 at p. 10).  The Court in *Union Pacific* court made clear that the catchall phrase does not encompass any production-related activity.  Of "the specific types of well work listed by the legislature as being covered, none . . . relate to the processing of gas or water after production from the well has occurred."  *Union Pac.*, 86 P.3d at 1294.  If the statute was more broadly construed, "work anywhere in the course of oil and gas production, processing, transportation or distribution could be covered," even though there is "no indication in the language of the statute that the legislature contemplated that result."  *Id.*  To the extent the facts relating to the sand-trap installation present a closer question than the facts in the

prior cases, the Wyoming Supreme Court's repeated direction to "strictly construe" the anti-indemnity statute weighs heavily in favor of finding that it does not apply.  *See, e.g.*, *R&G Elec.*, 53 F. App'x at 862 ("[W]e again note the Wyoming Supreme Court's instruction that we must strictly construe § 30-1-132.").

The Wyoming statute, the case law interpreting and applying it, and the undisputed facts in the summary judgment record lead to the conclusion that the sand-trap installation did not closely relate to well drilling.  The service performed under the parties' contract did not relate to "rendering services in or in connection with any well drilled for the purpose of producing or disposing of oil, gas or other minerals."  WYO. STAT. § 30-1-132.  The contract therefore did not pertain "to any well for oil, gas or water," and the anti-indemnity statute does not apply.  WYO. STAT. § 30-1-131(a)(i). Because the indemnification clause would be enforceable under Wyoming law, enforcing the clause under Texas law does not contravene Wyoming public policy, and the § 187 exception does not apply.  The contract's choice-of-law clause governs, Texas law applies, and Collins may enforce the indemnification provision against Anadarko.

## IV.     Conclusion

Collins's motion for summary judgment is granted, (Docket Entry No. 14), and Anadarko's cross-motion is denied, (Docket Entry No. 16).  No later than **March 29, 2016**, Collins must submit a proposed judgment granting the specific relief it seeks.

SIGNED on March 23, 2016, at Houston, Texas.

_Lee H. Rosenthal_
Lee H. Rosenthal
United States District Judge